NO.[1] **07-41056**

(Dist. Ct. Dkt. No. 2:04CV142; Eastern District of Texas, Honorable Judge John T. Ward)

| | | |
|---|---|---|
| KAREN VAUGHN, Individually & on Behalf of All Others Similarly Situated, | § | IN THE UNITED STATES |
| | | U.S. COURT OF APPEALS |
| | | **FILED** |
| Plaintiff, | § | OCT 25 2007 |
| | § | |
| V. | § | CHARLES R. FULBRUGE III COURT OF APPEALS |
| | § | CLERK |
| AMERICAN HONDA MOTOR | § | |
| CO., INC. & HONDA MOTOR | § | |
| CO., LTD., | § | |
| | § | |
| Defendants. | § | FIFTH CIRCUIT |

U.S. COURT OF APPEALS RECEIVED OCT 25 2007 NEW ORLEANS, LA.

## CLASS MEMBER HAWTHORN'S MOTION FOR STAY OF APPEAL BOND

**TO THE HONORABLE JUDGES OF SAID COURT:**

Comes Now, Class Member Zack Hawthorn, by and through his attorney of record

Joseph C. Hawthorn, and pursuant to Fed. R. App. P. 8, hereby files his Motion for Stay of

Appeal Bond and in support thereof would show the following:

I.
Procedural History

On November 7, 2006, the United States District Court in the Eastern District of Texas,

Marshall Division, the Honorable John T. Ward presiding, ("the court"), entered a Preliminary

Approval Order that preliminarily approved a proposed Class Action Settlement Agreement in

the above case. On April 25, 2007, in accordance with the Class Action notice, Class Member

Zack Hawthorn filed a timely objection to the proposed Class Action Settlement Agreement.

---

[1] The district court ordered the posting of an appeal bond within seven (7) days of filing the Notice of Appeal. Because any Motion for Stay should be filed within those seven (7) days, this Motion is being filed with an unassigned Fifth Circuit docket number but referenced with the district court docket number.

Clerk's Doc. No. 176. On August 21, 2007, the court conducted a Fairness Hearing. On August 28, 2007, Class Counsel and Defendant Honda ("the Parties"), before the court even entered an Order approving of the settlement, moved the court to order an appeal bond in the amount of $1,000,000.00 per Objector. Clerk's Doc. No. 270. On September 4, 2007, Class Member Hawthorn responded to that Motion and asked the court to deny the Motion for Appeal Bond. Clerk's Doc. No. 276. On September 28, 2007, the court approved the Settlement Agreement and ordered each person wishing to appeal that Final Order deposit a cashier's check or surety bond in the amount of $150,000.00 per appealing objector to secure the costs of the appeal as a condition of prosecuting that appeal. Clerk's Doc. No. 289.[2] The bond is to be posted within seven (7) days after filing the Notice of Appeal. Clerk's Doc. No. 290,[3] p. 17. Hawthorn timely filed a Notice of Appeal on October 24, 2007.

## II.
### *The district court has denied the relief requested.*

Fed. R. App. P. 8(a)(2)(A)(ii) requires a Motion for stay show that the district court denied the earlier motion or relief requested and state any reasons given by the district court for its action. As previously mentioned, Hawthorn asked the lower court to deny the Parties' Motion for Appeal Bond. Clerk's Doc. No. 276. Obviously, the lower court denied the Motion by entering an Order requiring an appeal bond of $150,000.00 per objector. The district court granted the Parties motion because the "detrimental impact of an appeal as to the entire class renders it appropriate for the court to require any objector to post an appeal bond." Clerk's Doc.

---

[2] Attached as Exhibit A.

[3] Attached as Exhibit B.

2

No. 290, p. 16 citing Rule 7. The court also stated that "it bear[ed] mention that Honda stands ready to deliver approximately $10 million in lease refunds to class members." Id. Also, the court was of the opinion that the amount for the bond should reflect the significant possibility that any objector's appeal will be subject to Fed. R. App. P. 38. Id.

III.
REASONS FOR GRANTING THE STAY

**1.** ***The district court has no clear authority to order the potential award of attorneys' fees by an appellate court to be included in an appeal bond.***

In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal. Fed. R. App. P. 7. Apparently the district court defined "costs" as those permitted by Fed. R. App. P. 38. Yet, that rule states that if a *court of appeals* determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee. Thus, from a plain reading of the two rules, the district court has no authority to require a bond to ensure the payment of attorneys' fees or damages on appeal. The *court of appeals* may award "just damages" after a separately filed motion, notice from the court, and reasonable opportunity to respond, and the court then finds the appeal is frivolous. In fact, the lower court itself admitted in a footnote that the consideration of the potential award for attorneys' fees for purposes of an appeal bond is an issue of first impression for the Fifth Circuit. Clerk's Doc. No. 290, p. 16 fn.1.

The lower court cited two non-Fifth Circuit district court opinions (one unreported) in

3

support of its order.[4] In *Sckolnick*, a litigious *pro se* litigant brought a discrimination action against the Defendants alleging they discriminated against him on account of his religion on the sale of a wood lot. 820 F.2d at 14. The court granted summary judgment in favor of the Defendants and drafted an order under Rule 7 compelling the Plaintiff to post security for appellate costs by way of a deed or a bond in the amount of $5,000. *Id.* The costs contemplated by the district court were pursuant to Fed. R. App. P. 38 *and* 39.[5] *Id.* at 15. Therefore, the First Circuit never explicitly stated attorneys' fees under Fed. R. App. P. 38 could be calculated in the amount of the bond set by the district court pursuant to Rule 7. In fact, the First Circuit eventually denied the Defendant's motion for damages pursuant to Fed. R. App. P. 38. *Id.*

### 2. *The district court's reasons for ordering an appeal bond are unfounded.*

First, the district court states that the "detrimental impact of an appeal as to the entire class renders it appropriate for the court to require any objector to post an appeal bond." Clerk's Doc. No. 290, p. 16. The court does not define exactly what that "detrimental impact" is or how it is calculated. However, the Parties have invited this alleged "detrimental impact" onto themselves by entering into a Stipulation and Agreement of Settlement in which the funding of the settlement and "effective date" of the settlement only occurs once all appellate rights with respect to the Final Order and Judgment have been exhausted. Clerk's Doc. No. 289, Ex. 1, p. 7.

Secondly, the court was of the opinion that the "amount of bond should reflect the

---

[4] *Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) and *Allapattah Servs., Inc. V. Exxon Corp.*, 2006 WL 1132371, *17 (S.D. Fla. 2006).

[5] Fed. R. App. P. 39 allows for certain costs taxable in district court such as (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal.

significant possibility that any objector's appeal will be subject to Fed. R. App. P. 38." Clerk's Doc. No. 290, p. 16. Strictly speaking, *every* appeal is subject to Rule 38 so this cannot be a reason in and of itself to set a bond. Earlier in the Final Judgment and Order of Dismissal, the court "conclude[d] that the [sic] there is a significant probability that any appeal of the court's decision to overrule these objections would be summarily denied pursuant to Federal Rules of Appellate Procedure 38 and an award of attorneys' fees and costs assessed against the appealing objector(s)." Clerk's Doc. No. 289, p. 6. First, Rule 38 does not deal with any appeal being "summarily" denied by this Court. Rule 38 clearly states if the court of appeals, not the district court, determines an appeal is frivolous, the appellate court may award "just damages" and single or double "costs" to the appellee. Rule 38 does not state attorneys' fees can be awarded to the appellee, contrary to what the lower court has read into the Rule.

### 3. *The district court cannot include an anticipated award of attorney's fees in setting a bond pursuant to Fed. R. App. 7.*

The lower court set a bond of $150,000.00 per appealing objector pursuant to Fed. R. App. P. 7 presumably because that court felt that the appellant's objections are without merit. Clerk's Doc. No. 289, p. 6. Rule 7 states that a district court may require the appellant to file a bond necessary to ensure payment of costs on appeal. That Rule does not define "costs." As previously mentioned, the lower court admitted that the potential award of attorneys' fees for purposes of an appeal bond is an issue of first impression for the Fifth Circuit. Clerk's Doc. No. 290, p. 16 fn. 1.

Several courts have held that a bond pursuant to Rule 7 does not include attorneys' fees. *Terry Inv. Co. v. United Funding and Investors Inc.*, 800 F. Supp. 879, 882 (E.D. Cal., 1992);

5

*Littlefield v. Mack*, 134 F.R.D. 234, 235 (N.D. Ill., 1991); *In re American President Lines, Inc.*, 779 F.2d 714, 716 (D.C. cir. 1985). *In re American President Lines* is directly on point. There, the district court required the plaintiff to post a bond because the court believed the appeal likely would be found to be frivolous and APL thus would qualify for costs and damages in the appellate court under Rule 38. 779 F.2d at 716. The D.C. Circuit held that the "costs" referred to in Rule 7 were simply those that could be taxed against an unsuccessful litigant under Rule 39 and did not include attorneys' fees that may be assessed on appeal. *Id.* The D.C. Circuit went on to hold that it is for the court of appeals, not the district court, to decide whether Rule 38 costs and damages should be allowed in any given case. *Id.* at 717. "The District Court's bond order effectively preempts this court's prerogative to determine, should [the Plaintiff's] appeal be found to be frivolous, whether APL is entitled to Rule 38 recovery." *Id.*

The Second, Sixth and Eleventh Circuits say that "costs" under Rule 7 do include attorneys' fees but only if "costs" include attorneys' fees under the scope of the statute or other authority in which the claim is based.[6] However, as *Pedraza* noted, the meaning of "costs" as used in Rule 7 should be derived from the definition of costs contained in the *statutory fee shifting provision* that attend the plaintiff's underlying cause of action. 313 F.3d 1323, 1333. Here, the underlying causes of action were a claim under the Federal Odometer Act 49 U.S.C. § 32710 and a breach of the Texas implied warranty of merchantability. Clerk's Doc. No 1, pp. 8-9. Neither of these causes of action involve a statutory fee shifting provision. See *Miller's Apple Valley Chevrolet Olds-Geo, Inc. v. Goodwin*, 177 F.3d 232, 235 (4th Cir. 1999)(§ 32710(b)

---

[6] *Adsani v. Miller,* 139 F.3d 67 (2nd Cir. 1998); *In re Cardizem CD Antitrust Litigation,* 391 F.3d 812, 817 (6th Cir. 2004); *Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002).

permits only prevailing plaintiffs to recover costs and attorneys' fees); *Elliot v. Kraft Foods North America, Inc.*, 118 S.W.3d 50, 55 (Tex. App. – Houston [14th Dist.], 2003)(consumer sued manufacturer for breach of implied warranty of merchantability and violations of the Deceptive Trade Practices Act (DTPA). The court held it was "undisputed" the plaintiff can recover attorneys' fees only if she prevailed under the DTPA). Even if this Court sides with Second, Sixth and Eleventh Circuits, anticipated attorneys' fees cannot come under Rule 7's definition of "costs" because the underlying statutes used to prosecute this case do not contain statutory fee shifting provisions.

### 4. *This appeal is not frivolous.*

Class Member Hawthorn will give a short summary of the litigation to show this appeal is not frivolous.

Class representatives Karen Vaughn and Sharon McQuiston have alleged that the odometers in their Honda vehicles overstated their mileage by 2.0% to 4.0%. To remedy this alleged breach of the implied warranty of merchantability and Federal Odometer Act violation, the proposed settlement offered the following to the settlement class:

1. Mileage limitation extensions of all vehicle warranties by 5%

2. Repair cost refunds if any members paid for repairs during the extended mileage periods and those repairs would otherwise have been covered by the warranty

3. An increase in the mileage limits of the lease of a class vehicle by 5%

4. A refund of any excess mileage charges on the lease of a Class vehicle.

Hawthorn purchased a 2003 Honda Accord from Mike Smith Autoplaza, Inc. in Beaumont, Texas on June 12, 2003. As such, he is a member of the Settlement Class. The

vehicle was not leased, nor did Class Member Hawthorn have any repairs done on the vehicle outside of the warranty period. Therefore, the class action settlement did not benefit Hawthorn in any way.

### The Diminution in Value Theory

But, the defective odometer pursuant to the defendants' alleged breach of the implied warranty of merchantability and Federal Odometer Act violations did harm Class Member Hawthorn under the theory that the overinflated odometer overstated the vehicle's actual mileage and diminished the resale value of his vehicle – the "diminution in value" theory. On August 17, 2005, Hawthorn traded in his Honda Accord for a 2005 Audi A4 at Sonic Advantage Porsche Audi in Houston, Texas. By trading in his Accord in exchange for the Audi, that dealership gave an allowance of $15,400.00 towards that purchase based upon the Honda's fair market value with a recorded mileage of 45,470. Had the odometer correctly recorded his mileage, Class Member Hawthorn would have received more of an allowance for his Honda trade-in. Through certified copies of the Kelley Blue Book Used Car Guide, Hawthorn alleged he would have received approximately $212.50 more for his vehicle. Hawthorn further estimated that 1.3 million of the Honda vehicles included in the Class had already been sold. Clerk's Doc. No. 176, p. 7. According to those figures, an approximate $294.2 million loss by the Honda sellers is being unrecouped by the proposed settlement. Id.

Hawthorn timely objected to the proposed Class Action Settlement because the representative parties did not fairly and adequately protect the interests of the class, namely the 1.3 million members who had already sold their vehicles and unduly received less value for that vehicle had the odometers performed correctly. Thus, the settlement was not "fair, adequate and

8

reasonable." Clerk's Doc. No. 176. The lower court overruled that objection, holding that the claims of the named plaintiffs were typical of the Settlement Class and the named plaintiffs and their counsel fairly and adequately represented and protected the interests of all of the Settlement Class Members. Clerk's Doc. No. 289, p. 2. In support of overruling Hawthorn's objection, the court stated that the vast majority of class members would have a difficult time establishing any claim in diminution in value. Clerk's Doc. No. 290, p. 13. Therefore, the court held that it was not unreasonable for class counsel to "focus their efforts" on obtaining monetary benefits for certain class members and release claims for diminution in value. Id.

Under that reasoning, the court openly approved a settlement in which some members were represented at the expense of others. This is entirely inconsistent with the court's statement that "no conflict or antagonism exists between the class and its representatives and the named plaintiffs' legal and remedial theories are the same as the class as a whole." Clerk's Doc. No. 290, p. 6. In fact, the Parties openly admitted to a settlement that included a 5% warranty mileage increase, far higher than the actual alleged mileage overstatement, in order to "make up" for the lack of earmarked benefits with respect to various "abstract" damage theories such as diminution in value. Clerk's doc. No. 281, ¶ 127. There is nothing "speculative" or "abstract" about a claim for diminution of value. In his objection, by simply using Kelley Blue Book figures, Hawthorn was able to show the approximate loss in value of his vehicle because of the overstated mileage. Throughout the litigation, the Parties never disagreed with Hawthorn's estimation that 1.3 million Class Members suffered a loss of $293 million in the diminution of value of their Honda vehicles – at the very least, the Parties never brought forth their own calculations as to the amount of loss.

To bolster its holding, the court noted two cases in which plaintiffs in diminution of value cases have faced "significant hurdles." Clerk's Doc. No. 290, p. 13. In *Briehl v. General Motors Corp.*, 172 F.3d 623, 627-29 (7th Cir. 1999), the plaintiffs in appealing the district court's dismissal insisted they suffered damage because the braking systems installed in their vehicles diminished the vehicles' resale value. Yet, that court noted the plaintiffs did not even allege any member of the class sold their vehicle at a reduced value and failed to state the amount of those damages. Here, Hawthorn proved he sold his vehicle, and, by utilizing the Kelley Blue Book values, showed he suffered monetary damages in the amount of $212.50. In *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1451 (S.D. Tex. 1996), the plaintiffs complained the safety belt restraint system did not comply with certain Federal regulatory standards. Again, the plaintiffs there admitted to sustaining no personal injuries relating to the safety restraint system. *Id.* at 1451-2. Since the plaintiffs could not indicate any sort of injury, the court did not allow the plaintiffs additional discovery which, according to the plaintiffs, may have shown damages in the form of diminution of value. *Id.* at 1455 n. 7. In both of those cases, the plaintiffs showed no injury in relation to the diminution of value of the vehicle, something Hawthorn easily did – hardly a "significant hurdle" to prove such a claim.

The proposed class settlement appears only to be fair and reasonable for leasees of Hondas and to those who have yet not sold their vehicles. A warranty extension for repairs outside the original mileage limitation appears to make present Honda owners whole as to their benefit of the bargain of that mileage warranty limitation. Present Honda owners are also adequately compensated for their benefit of the bargain when they are reimbursed for repairs performed within the window of when the repair would have been otherwise covered by the

warranty but for the false increase of mileage by 5%. Leasees are made whole because their mileage limits are increased by 5% or they will be reimbursed for "excess" mileage charges of up to 5%.

However, those hurt the most by Honda's alleged wrongdoing are the Class Members who do not reap *any* of the settlement benefits. According to Hawthorn's estimations, past Honda owners have been harmed by as much as $300 million. Yet, when the court approved that settlement, that amount went uncompensated while those Class Members were precluded from filing their own lawsuit for recovery on any claims relating to odometer accuracy on their Class Vehicles. (Settlement Notice, ¶ 7).

A class action can be maintained only if the following prerequisites are met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The proposed settlement and preliminary class certification wholly fails the third and fourth elements. The "adequacy-of-representation" element has tended to merge with the commonality and typicality criteria of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 fn.20 (1997) (citations omitted). The adequacy heading also factors in competency and conflicts of class counsel. *Id.*

Here, there are three discrete groups of class members affected by this settlement. Present Honda owners, past or present Honda leasees, and past Honda owners. The settlement makes the first two groups whole while leaving the last nothing. Thus, the interests of these three groups are not aligned.

11

The Supreme Court was confronted with a proposed class action certification sought to achieve a global settlement of current and future asbestos-related claims. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 597 (1997). In *Amchem*, the class encompassed perhaps millions of individuals who were, or some day may have been, adversely affected by past exposure to asbestos products manufactured by one or more of twenty companies. *Id.* More than half of the named plaintiffs alleged that they or their family members had already suffered various physical injuries as a result of the exposure. *Id.* at 603. The others alleged that they had not yet manifested any asbestos-related condition. *Id.* Strenuous objections were raised by class members because claimants whose injuries had become manifest and those without manifest injuries ("exposure-only") should not have common counsel and should not be aggregated in a single class. *Id.* at 607-8. The objectors urged that the settlement unfairly disadvantaged the exposure-only claimants because it failed to adjust for inflation or account for changes in medical understanding of asbestos related injuries. *Id.* at 606. Also, the compensation was intolerably low in comparison to awards available in tort litigation and certain claims were not compensable under the settlement agreement that otherwise would have been under the tort law of several States. *Id.* In an earlier opinion, the Third Circuit Court of Appeals stated that the most salient divergence of interests of this class separated plaintiffs already afflicted with an asbestos-related disease from the exposure-only "no injury" plaintiffs. *Id.* 610. The Third Circuit reasoned that the exposure-only plaintiffs would want protection against inflation and clear opt-out rights and causation provisions that would keep pace with the changing science and medicine of the asbestos-related injuries while the already injured plaintiffs would care little about these provisions and would trade them in exchange for higher current payouts. *Id.* at 611. The

12

Supreme Court agreed with the Third Circuit's opinion that in terms of the settlement the named plaintiffs operated under a proper understanding of their representational responsibilities. *Id.* at 627-8.

This class has representatives who are concerned about receiving their full benefits of the warranty (present Honda owners) and lease mileage limitations (Honda leasees) while ignoring those class members who have already experienced an appreciable monetary injury from unjustly receiving less for their trade-in had the odometer not been defective thereby receiving no remuneration under the terms of the proposed settlement. The Supreme Court in *Amchem* disavowed this same style of class representatives throwing other class members under the bus in exchange for concessions from the defendant that would only benefit themselves. Not only does this proposed settlement not pass muster under the "fair, adequate and reasonable" test, but it also contains a class where members have atypical claims that are not adequately represented, further failing the two most important requirements of Rule 23. The lower court should have disapproved the proposed settlement and required a division of these subclasses and ordered separate representation of the owner-leasee subclass and the past owner subclass and the assignment of counsel to negotiate on behalf of those subclasses. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999).

### 5. *Class Counsel cannot argue this appeal is frivolous.*

Here, Class Counsel should be estopped in claiming Hawthorn's claim for diminution in value is frivolous. They themselves admitted the tampered odometers decreased the resale value of the vehicles. Clerk's Doc. No. 161, p. 2. In their Memorandum in Support of Final Approval of the Settlement, Class Counsel reiterated that they "continue[d] to believe strongly" in the

13

diminution of value theory. Clerk's Doc. No. 243-1, p. 40. In fact, Class Counsel has filed two other class actions currently pending in the Eastern District of Texas pursuant to the same cause of action and have claimed the inflated mileage due to the faulty odometers have decreased the market value of the plaintiffs' vehicles. *Womack v. Nissan North America*, 2:06CV479-DF, Clerk's Doc. No. 1, ¶ 16; *Jarrell v. Daimler Chrysler Motors Co. L.L.C.*, 2:07CV205-TJW, Clerk's doc. No. 1, ¶ 16.

Hawthorn has also objected to the class action settlement in good faith. He timely filed an eleven page objection accompanied by five attachments that supported his legal and factual bases and conclusions. Clerk's Doc. No. 176. He filed a six page response to the Parties' Motion in Support of Final Approval of Settlement Agreement. Clerk's Doc. No. 258. He attended and argued at the court's Fairness Hearing. On August 29, 2007, Hawthorn attended a court-ordered mediation and negotiated in good faith. Clerk's Doc. No. 272. Hawthorn filed a response to the Parties Motion for Appeal Bonds. Clerk's Doc. No. 276. He also filed a response to the Plaintiffs' Proposed Findings of Fact and Conclusions of Law. Clerk's Doc. No. 285. These actions are consistent with a party that has a sincere and valid disagreement with the propriety of the class action settlement. One would not invest this time and effort in an objection that is "frivolous."

## IV.
### Conclusion

The lower court had not legal authority to set an appeal bond in the amount of $150,000.00 per appealing objector. Fed. R. App. P. 7 does not explicitly allow for the potential award of damages and attorneys' fees by an appellate court to be included in the amount of the

bond. Even if this Court agrees with the other courts of appeals that damages and attorneys' fees can be included in a Rule 7 bond, the underlying statutes used to prosecute these claims do not contain fee shifting provisions. Thus, those appellate decisions are inapposite.

Should this Court uphold the lower court's order setting an appellate bond, this Court should undoubtedly reduce the bond significantly. Hawthorn admits that a bond for costs pursuant to Fed. R. App. P. 39 are proper – costs associated with preparing and transmitting the record. In this case, that amount should not exceed $1,000.00. While the clerk's record contains approximately 300 filings, the reporter's record is small because there was only one live hearing. Even if this Court includes attorneys' fees in calculating the Rule 7 bond, which Hawthorn would strenuously disagree with, $150,00.00 per appealing objector is exhorbitant. The lower court found $350 per hour to be a reasonable hourly rate in this case. Clerk's Doc. No. 290, p. 15. Under that rate, $150,000.00 would account for 428 attorney work hours. The Parties' attorneys would not come close to approaching that amount of time defending this appeal. Most, if not all, of the necessary briefing has already been done at the district court level. There was no trial and the record in the case has already been reviewed *ad nauseum* by the Parties. Furthermore, Hawthorn will submit there are only three potential appealing objectors who have essentially the same claims. To apply the bond to *each* appellant, when the work for the Parties defending each appeal is essentially the same, is unnecessary and illogical.

WHEREFORE, PREMISES CONSIDERED, the Appellant respectfully requests this Court reduce the bond to $1,000.00 to include only the costs contemplated by Fed. R. App. P. 39.

Respectfully Submitted,

Joseph C. Hawthorn
Hawthorn & Hawthorn, PC
485 Milam
Beaumont, Texas 77701
(409) 838-3969
(409) 832-5611 fax
State Bar No. 09258000
Attorney for Class Member Zack Hawthorn

## CERTIFICATE OF SERVICE

This is to certify that on October 25, 2007, a true and correct copy of the above and foregoing document was served on the following via regular U.S. Mail:

**James Andrew Holmes**
Attorney at Law
605 South Main
Suite 203
Henderson, TX 75654

**David Brian Miller**
Law Offices of David B Miller
4350 Beltway Dr
Addison, TX 75001

**Jay Kutchka**
Jones Jackson & Moll PLC
PO Box 2023
Fort Smith, AR 72902

**Robert Stephen Woodfin**
Law Office of R. Stephen Woodfin
PO Box 1638

Kilgore, TX 75663


**Sidney Calvin Capshaw, III**
Brown McCarroll - Longview
1127 Judson Rd - Ste 220
PO Box 3999
Longview, TX 75606-3999


**Brian C Anderson**
O'Melveny & Myers - Washington DC
1625 Eye Street, N.W.
Washington, DC 20006


**Elizabeth L DeRieux**
Brown McCarroll
1127 Judson Rd - Ste 220
PO Box 3999
Longview, TX 75606-3999


**Gordon Randall Akin**
G R Akin Attorney at Law
3400 W Marshall Ave
Suite 300
Longview, TX 75604


**David B Johnson**
Sidley Austin - Chicago
Bank One Plaza
One South Dearborn Ave
Chicago, IL 60603

**David T Pritikin**
Sidley Austin - Chicago
Bank One Plaza
One South Dearborn Ave
Chicago, IL 60603

Joseph C. Hawthorn

EXHIBIT A

FILED-CLERK
IN THE UNITED STATES DISTRICT COURT U.S. DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION          2007 SEP 28  PH 4: 03

                                                    (* EASTERN-MARSHALL

KAREN VAUGHN                    §
                                §
Vs.                             §    CIVIL ACTION NO: 2:04-CV-142——————
                                §
AMERICAN HONDA MOTOR CO., ET AL. §


**FINAL JUDGMENT AND ORDER OF DISMISSAL**

On November 7, 2006, the court entered a Preliminary Approval Order that preliminarily approved the proposed Settlement Agreement in this Litigation and specified the manner in which the Defendants were to provide Class Notice to the Settlement Class. All capitalized terms used in this Order have the meaning as defined in the Settlement Agreement, which is attached hereto at Exhibit 1 and incorporated herein by reference

Following the dissemination of Class Notice and the publication of Short Form Notice, Settlement Class Members were given an opportunity to (a) request exclusion from the Settlement Class, or (b) object to the Settlement Agreement (including Class Counsel's request for fees and expenses and the Named Plaintiffs' application for an Incentive Award).

The court conducted a Fairness Hearing on August 21, 2007, at which time the court granted all interested persons a full opportunity to state any objections to the Settlement Agreement. The Fairness Hearing was held more than ninety (90) days after Defendants provided notice of the proposed Settlement to federal and state-level attorneys general as required by 28 U.S.C. § 1715(b), thus complying with 28 U.S.C. §1715(d).

Having read and fully considered the terms of the Settlement Agreement, and all submissions

made in connection with it, the court finds that the Settlement Agreement should be finally approved

and the Litigation dismissed with prejudice as to all Settlement Class Members who have not

excluded themselves from the Settlement Class, and without prejudice as to all persons who timely

and validly excluded themselves from the Settlement Class.

**IT IS HEREBY ORDERED** that:

1.     The prior provisional certification of the Settlement Class is hereby confirmed and

        made final for purposes of the Settlement Agreement as approved by this Order. The

        Settlement Class is defined as:

        All persons who bought or leased in the United States of America (including
        the District of Columbia, Puerto Rico, and the U.S. Virgin Islands) a model
        year 2002 through 2006 Honda or Acura automobile or a 2007 Honda Fit (the
        "Class Vehicles") between April 13, 2002 and November 7, 2006.

        Specifically excluded from the Settlement Class are: (a) all federal court
        judges who have presided over this case and their spouses and anyone within
        three degrees of consanguinity from those judges and their spouses, (b) all
        persons who elect to exclude themselves from the Settlement Class, (c) all
        persons who have previously executed and delivered to Honda releases of
        their claims, (d) Defendants' employees, officers, directors, agents, and
        representatives and their family members (e) those persons timely submitting
        requests for exclusion as reflected on Exhibit 2.

2.     With respect to this Settlement Class only, the court finds that (a) the members of the

        Settlement Class are so numerous that joinder of all members in the litigation is

        impracticable; (b) there are questions of law or fact common to all members of the

        Settlement Class which, in the settlement context, predominate over any individual

        questions; (c) the claims of the named plaintiffs are typical of the claims of the

        Settlement Class; (d) the named plaintiffs and their counsel have fairly and

        adequately represented and protected the interests of all of the Settlement Class

        members; and (e) a class action is superior to other available methods for the fair and

efficient settlement of this dispute considering (i) the interests of the Settlement Class members in individually controlling the prosecution of separate actions; (ii) the extent and nature of any litigation concerning this controversy already commenced by Settlement Class members; (iii) the desirability of continuing the litigation of these claims in this forum; and (iv) the difficulties likely to be encountered in the management of the class action. The court expresses no opinion about the suitability of class certification for litigation purposes.

3. The court hereby finds and concludes that personal Class Notice has been given to all Settlement Class Members known and reasonably identifiable and the Short Form Notice has been duly published, in full satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process.

4. The court hereby approves the terms of the Settlement Agreement as fair, reasonable, and adequate as it applies to the Settlement Class, and directs consummation of all its terms and provisions. Additionally, the court orders Defendants to inform all Honda and Acura dealers in the United States of the warranty extensions provided by the Settlement Agreement.

5. The court awards an Incentive Award of $10,000 to Named Plaintiff Karen Vaughn and $1,000 to Named Plaintiff Sharon McQuiston, and directs Defendants to pay such amounts to the Named Plaintiffs through Class Counsel. Class Counsel's Fee and Expense Application is addressed in a separate Order.

6. The Settlement Agreement shall be binding on Defendants and all Plaintiffs, including all members of the Settlement Class who have not been excluded pursuant to the Settlement Agreement.

7.    The court dismisses on the merits and with prejudice the First Amended Class Action

Complaint filed in this Court in *Karen Vaughn, Individually & on Behalf of All*

*Others Similarly Situated v. American Honda Motor Co , Inc. & Honda Motor Co.,*

*Ltd* , Case No.: 2-04CV-142, and the Original Class Action Complaint filed in this

Court in *Sharon McQuiston, Individually & on Behalf of All Others Similarly*

*Situated v. American Honda Motor Co , Inc and Honda Motor Co. Ltd* , Case No.:

2-06CV-253. In addition, the court also dismisses all claims which any Settlement

Class Members alleged or could have alleged in any way relating to the accuracy of

the odometers in the Class Vehicles.

8.    Upon the Effective Date of the Settlement, the Named Plaintiffs and each Settlement

Class Member shall be deemed to have, and by operation of this Final Judgment and

Order of Dismissal shall have, released, waived and discharged American Honda

Motor Co., Inc., Honda Motor Co., Ltd., Nippon Seiki Co., Ltd., New Sabina

Industries, Inc., Honda of America Mfg., Inc., Honda Manufacturing of Alabama,

LLC, Honda Canada, Inc., Honda R&D Co., Ltd., Honda R&D Americas, Inc.,

American Honda Finance Corporation and their past or present directors, officers,

employees, partners, principals, agents, heirs, executors, administrators, successors,

reorganized successors, subsidiaries, divisions, parents, related or affiliated entities,

suppliers (including but not limited to suppliers of all equipment associated with

odometers), authorized dealers, underwriters, issuers, insurers, co-insurers,

re-insurers, licensees, divisions, joint ventures, suppliers, assigns, associates,

attorneys, and controlling shareholders from any and all other claims, demands,

actions, causes of action of any nature whatsoever, including but not limited to any

claim for violations of federal, state, or other law (whether in contract, tort, or otherwise, including statutory and injunctive relief, common law, property, and equitable claims), and also including Unknown Claims that were or could have been asserted against the Released Parties in the Litigation, or in any other complaint, action, or litigation in any other court or forum based upon or in any way relating to the accuracy of the odometers in the Class Vehicles.

9.   All members of the Settlement Class who did not duly request exclusion from the Settlement Class in the time and manner provided in the Class Notice are hereby barred, permanently enjoined, and restrained from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any jurisdiction or court against Defendants or any of the other entities or persons who are to be discharged as noticed above in paragraph 8, based upon, relating to, or arising out of, any of the matters which are discharged and released pursuant to paragraph 8 hereof. Identification information about Settlement Class Members who effectively excluded themselves from the Class is attached as Exhibit 2 to this Order.

10.  If (a) the Effective Date of Settlement does not occur for any reason whatsoever, or (b) the Settlement Agreement becomes null and void pursuant to the terms of the Settlement Agreement, this Order shall be deemed vacated and shall have no force or effect whatsoever.

11.  Without affecting the finality of the Final Judgment and Order of Dismissal in any way, the court reserves continuing and exclusive jurisdiction over the parties, including all members of the Settlement Class as defined above, and the execution, consummation, administration, and enforcement of the terms of the Settlement

Agreement.

12. Pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57, the court declares that the allegations made in this Litigation concerning the performance of odometers in the Class Vehicles do not confer upon Settlement Class Members who transfer ownership of their Class Vehicle an obligation under 49 U.S.C. §32705(a)(1)(B) and 49 C.F.R. §580.5(e)(3) to give the transferee a written disclosure that the mileage is unknown.

13. The court further finds that with regard to any Class Vehicle which at any time in the future will be covered by an insurance policy governed by the California Insurance Code Section 1861.02, for which a statement of estimated miles driven is required under 10 CCR Sec. 2632.5 or any successor statute or regulation, the owner of such vehicle, in making such estimate, may base such estimate on the vehicle's driving experience reduced by a factor of two and one-half percent (2 1/2 %).

14. The court has considered the timely objections to the Settlement and finds that such objections are without merit and should be overruled.

15. The court further concludes that the there is a significant probability that any appeal of the court's decision to overrule these objections would be summarily denied pursuant to Federal Rule of Appellate Procedure 38 and an award of attorneys' fees and costs assessed against the appealing objector(s). Therefore, pursuant to Federal Rule of Appellate Procedure 7, any person wishing to appeal this Final Order shall deposit a cashier's check or surety bond from an approved company with the Clerk of the Court to secure the costs of appeal as a condition of prosecuting the appeal. The amount of the bond will be $150,000 per appealing objector.

**IT IS SO ORDERED** this _28th_ day of _September_ , 2007.

T. JOHN WARD
U. S. District Judge

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

KAREN VAUGHN                        §
                                    §
Vs.                                 §        CIVIL ACTION NO. 2:04-CV-142
                                    §
AMERICAN HONDA MOTOR CO., ET AL.    §

## MEMORANDUM OPINION AND ORDER

**1.    Introduction.**

The court grants the parties' motion for approval of the settlement in this consumer class

action case.  The court certifies the requested class for settlement purposes and finds that the

settlement is fair, adequate and reasonable.  The court overrules the objections made to the proposed

settlement.

**2.    Factual Background and Procedural Posture.**

*A.    The Underlying Lawsuits.*

On April 13, 2004, Karen Vaughn commenced this case.  She alleged that Honda violated

the Federal Odometer Act and breached the implied warranties of merchantability.  Her claim was

not that her Honda had more miles on it than the odometer stated.  She contended that the odometer

in her Odyssey minivan recorded more miles than she had actually driven.  Specifically, she

contended that the odometers in the 1999 through 2004 Honda Odysseys overstated mileage by

2.5%-4%.  She sought certification of a nationwide class of owners and lessees of these Honda

vehicles.

Honda defended the suit by filing a motion to dismiss, contending that the Federal Odometer

Act did not reach the conduct of manufacturers who designed and installed odometers.  Honda also

argued that the plaintiff had not pleaded a sufficient implied warranty claim. Honda's motion to dismiss was denied by this court in March 2005. When the plaintiff amended its class action suit to join Nippon Seiki and New Sabina (the assemblers of the odometers), the court denied similar motions to dismiss made on behalf of those parties.

Sharon McQuiston filed a second class action suit against Honda in June 2006. This suit alleged that the odometers in all 2002-2006 model year Honda and Acura vehicles overstated mileage up to a factor of 3.75%. The plaintiffs sought certification of a nationwide class of owners and leasees of all such new or certified used Honda and Acura vehicles. Honda denied liability in its answer to the McQuiston case. The McQuiston and the Vaughn cases were subsequently consolidated.

The parties to the underlying case are represented by experienced and capable counsel. The plaintiffs are represented in this case by James A. Holmes, R. Stephen Woodfin, David B. Miller, and Jay Kutchka. These attorneys are experienced in class action and complex business litigation. Messrs. Holmes and Woodfin, in particular, have appeared in class action cases in this court on multiple occasions. The Honda defendants are represented by Brian C. Anderson and S. Calvin Capshaw. Both Mr. Anderson and Mr. Capshaw are experienced in class action and complex business litigation. Mr. Anderson, in particular, has handled numerous class actions on behalf of vehicle manufacturers. Nippon Seiki and New Sabina are represented by David B. Johnson, an experienced class action litigator.

B.    *The Proposed Settlement.*

Prior to the class certification hearing, the parties engaged in extensive discovery. The court held multiple hearings concerning discovery matters. They then proceeded to settlement discussions with the Hon. Robert Faulkner, a retired United States Magistrate Judge. In June 2006, they

executed a term sheet memorializing key terms of a proposed settlement. The settlement proposed to resolve claims involving the 2002-2006 model year Honda and Acura vehicles. As a result of the facts developed during this case, Honda announced that it would change the design tolerance of its odometers from -1.0%–+3.75% to -2.5%–+2.5%. The net effect of that change was that the median tolerance number for the Honda odometer was zero.

The proposed settlement provides significant relief to the class in the form of contractual warranty extension, enhanced legal rights, and global remediation to benefit the class. Honda will provide these benefits to a settlement class of approximately six million automobiles including more than one thousand (1,000) automobiles currently in the overseas service of NATO. Through the settlement, Honda agreed to extend the warranties and lease contracts of all owners and lessees of 2002-2006 Honda and Acuras in the United States by 5%–an amount that exceeds the largest error calculations for any class vehicle. Further, Honda will make complete restitution of otherwise warranted repair charges paid by class members within the 5% of their warranty mileage limitation as well as all lease mileage penalties for the first 5% of excess miles. Moreover, as alluded to above, Honda has agreed to modify its odometer tolerance standards for 2007 and later automobiles. Honda has agreed to pay all costs of the notice and settlement administration, all of the class members' attorneys' fees and all costs. None of these payments will reduce the benefits available to the class.

In consideration of the benefits to the class, the settlement contemplates that the court will issue an order approving the settlement that incorporates a global release of all claims by class members (except those who validly and timely excluded themselves from the settlement class) concerning the accuracy of the odometers in the class vehicles.

**3.   Discussion.**

 *A. Notice Issues.*

 The parties have sought to certify a settlement class and settle the class action at the same time. The court has considered the notice requirements of Fed. R. Civ. P. 23(c)(2) as well as the requirements for settlement and dismissal under Rule 23(e). *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004). For classes certified under Rule 23(b)(3), the law demands "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-74 (1974)(due process requires best notice practicable).

 The notice given to absent class members comports with the Federal Rules of Civil Procedure as well as due process. Honda mailed by First Class Mail, postage pre-paid, approximately 5.5 million copies of the court-approved notice to the last-known address of each reasonably identifiable class member. Honda also arranged to have the court-approved notice published in USA Today on November 22, 2006, December 6, 2006, and December 27, 2006. The notice was published on class counsels' website and Honda's website. In addition, the court approved a supplementary mailing of approximately 509,000 copies of the notice to additional class members. In all, Honda gave individual notice in the form approved by this court to approximately 6 million class members.

 The timing and the substance of the notice was adequate. *Tankersly v. Gulf Oil Corp.*, 848 F.2d 515, 518 (5th Cir. 1988). Most of the class members received nearly six months notice of the Fairness Hearing. All received ten weeks notice of the Fairness Hearing. The court-approved notice satisfied Rule 23(c)(2) because it contained sufficient information to allow the class members to make an informed choice whether to approve or disapprove of the settlement, object, or opt-out. *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 224 (5th Cir. 1981). Moreover, the

notice advised all of the class members of (1) the effect of the court's final approval order; (2) the

rights of class members to exclude themselves or object to the settlement; (3) the general terms of

the agreement; (4) the definition of the class; (5) the scope of the release and (6) the amount of

attorneys' fees and expenses requested. The notice regarding class counsels' application for

attorneys' fees was directed to the class members in a reasonable manner and it complied with Rule

23(h)(1). The court has considered all of the issues relating to notice and finds that the notice

requirement is satisfied.

      *B.*    *Certification of Class for Settlement Purposes.*

    Next, the court will turn to the issues related to certification. Certification of a settlement

class is permissible. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618-19 (1997). To determine

whether certification is proper, the court must first assess whether the Rule 23(a) prerequisites are

satisfied. Then, the court must consider whether certification under Rule 23(b)(3) is proper.

Because the case will not be tried, however, the court need not consider issues relating to trial

manageability. *See Amchem*, 521 U.S. at 620.

    The proposed class, with limited exceptions, is defined as follows:

> All persons who bought or leased in the United States of America (including the
> District of Columbia, Puerto Rico, and the U.S. Virgin Islands) a model year 2002
> through 2006 Honda or Acura automobile or a 2007 Honda Fit ("the Class Vehicles")
> between April 13, 2002 and November 7, 2006.

    The requirements of Rule 23(a) are (1) numerosity; (2) commonality; (3) typicality; and (4)

adequacy of representation. The proposed class easily meets these prerequisites.

    First, the number of class members (approximately 6 million) is such that joinder of all

members is impracticable. Thus, the numerosity requirement is satisfied.

    Second, there are common questions of law and fact affecting each of the class members.

The threshold for commonality is not high, and it is satisfied when the party opposing the class has engaged in a course of conduct that affects a group of persons. *McNamara v. Bre-X Minerals, Ltd.*, 2003 U.S. Dist. LEXIS 25641, *24-26 (E.D.Tex. 2003). Here, the plaintiffs alleged the existence of an identical product defect in the vehicles and a common scheme to defraud customers. Each class member's claim is governed by a federal statute, and the measure of actual damages and/or statutory penalties is the same for all class members under this statute. All of the class members' claims rest on the same alleged violations of the Federal Odometer Act.

Third, the claims of the class representatives are typical of those raised by the class members. The typicality requirement focuses on the "similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen v. Treasure Chest Casino., L.L.C.*, 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir.1997)). Here, the named plaintiffs' legal and remedial theories are the same as those of the class as a whole. The typicality requirement is satisfied.

Finally, the court considers the adequacy of representation. "Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir. 2001). The rule requires that there be no conflict or antagonism between the interests of the representative plaintiffs and the other class members. Moreover, the class representatives must possess a sufficient level of knowledge and understanding to be capable of controlling or prosecuting the litigation. *Feder v. Electronic Data Systems Corp.*, 429 F.3d 125 (5th Cir. 2005). Applying these principles, the court finds that the named representatives are adequate. The representative have been engaged in the prosecution of the case and have demonstrated their dedication to the interests of the class. No conflict or antagonism exists between the class and its representatives. Finally, the class counsel in this case are of the

highest quality, and are experienced class action litigators. They have appeared numerous times in this court in other class action cases. The adequacy requirement is satisfied.

The court now turns to the requirements of Rule 23(b)(3). First, the court considers whether common questions of law and fact predominate over individual issues. Predominance examines whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. In *Amchem*, the Court noted that "predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Id.* at 625. Here, the record indicates that the predominance test is satisfied. All of the plaintiffs' claims arise out of a single course of conduct. The crux of the case is that odometers in Honda and Acura vehicles overstate mileage. This defect is allegedly found in the odometers of all class vehicles. The plaintiffs' primary cause of action is the Federal Odometer Act. In a national class action, the presence of a federal statute avoids any problems as to predominance raised by divergent state laws. Because there has been a settlement, the case will not have to be tried; however, the remedies available to the plaintiffs in this case provide a fair and manageable means for compensating the absent class members. The settlement class is sufficiently cohesive that absent class members may be fairly bound by the decisions of the representative parties. *Amchem*, 521 U.S. at 621. The case satisfies the predominance requirement.

Under Rule 23(b)(2), the class action device must provide a superior means for adjudicating the class's claims. Class actions are superior when individual suits would be wasteful, duplicative, present managerial difficulty, and would be adverse to judicial economy. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999). This case meets this requirement. It would be cost prohibitive to require each individual class member to litigate his claim in this case. Moreover, given the large number of potential claims, judicial economy is served by the class action device.

The court need not consider any questions relating to the manageability of the class at trial, given that the court is considering a settlement class. *Amchem*, 521 U.S. at 620. The court is satisfied that the Rule 23(b)(3) considerations are met in this case.

  C.  *Evaluation of the Fairness of the Settlement.*

  The court has found that the class is properly certifiable for settlement purposes. Now, the court will examine the fairness of the proposed settlement. The court applies heightened scrutiny to this case, because the case was certified for settlement purposes. Rule 23(e) provides that a court should approve a settlement if it is fair, reasonable, and adequate, and consistent with the public interest. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The court will consider the following factors: (1) the plaintiffs' likelihood of success on the merits, weighed against the amount and form of relief offered in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the state of proceedings and the amount of discovery completed; (4) the nature of settlement negotiations; (5) the judgment of experienced counsel; (6) and objections raised by members of the class. *Newby*, 394 F.3d at 301. The court also considers the public interest in favor of settlement of class action lawsuits. *Cotton*, 559 F.2d at 1331.

  The most important factor is the probability of the plaintiffs' success on the merits. *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). Review of the circumstances in this case demonstrates that the monetary benefit and the extensions of the warranty and lease periods far outweigh the plaintiffs' uncertain prospects of success were the case fully litigated. In reaching this decision, the court finds that the proposed settlement value to the class is approximately $244 million that will be distributed to the class in the form of lease refunds, lease extensions, warranty extensions, and out-of-pocket reimbursement for warranty repairs that should have been covered by warranties that had prematurely expired.

The court has carefully considered the benefits to be conferred on the class. First, Honda has agreed to extend the mileage limitations of all manufacturer's and Honda extended warranty contracts by 5%. Among other things, this extension applies without any action on the part of any class member. It is transferable to subsequent purchasers to the same extent as the underlying warranty. Second, if a class member has paid for repairs during the extended mileage periods, he or she is entitled to a refund of 100% of the documented repair cost. This is significant. Plaintiffs' theory in this case, in part, relied on the fact that Honda calibrated its odometers to overstate mileage to avoid paying warranty repairs which otherwise would have been covered. The extended warranty provision of the settlement recovers for the class the benefit allegedly disgorged from the class by Honda's challenged conduct. The claims forms and dispute resolution procedures, moreover, are fair and reasonable.

With respect to leases, Honda has agreed to extend all current leases through American Honda Finance Corporation ("AHFC") by 5%. Leases will be extended automatically. Moreover, if a class member has made excess mileage charges to AHFC on the lease of a class vehicle, he or she will receive an automatic refund of those charges attributable to the first 5% of those excess miles. If a class member leased a vehicle from an entity unaffiliated with AHFC, then the class member will receive the same type of refund for excess miles, upon the submission of supporting proof. Finally, Honda has agreed to re-engineer every Honda and Acura vehicle in the world beginning with the 2007 model year to eliminate over-registration of miles by the odometer.

These benefits are estimated to cost Honda approximately $115 million. If purchased on the open market, the plaintiffs' expert has testified that the total value of these benefits would be approximately $244 million. The consideration was agreed upon after months of extensive negotiation between the parties. The defendants presented substantial defenses, and the plaintiffs'

success on the merits was highly uncertain. The theory of liability was novel, and the plaintiffs would have had to prove intent to defraud under the Federal Odometer Act. Likewise, they would have had to apply the statute to a manufacturer's decision to select a particular odometer and set its tolerance. Finally, they would have had to prove that the software code used in the odometer was a "device" within the meaning of the statute. The consideration paid in the settlement was not the result of fraud or collusion, and these experienced counsel struck a compromise that provided immediate and automatic benefits to the class. The settlement is well within the range of reasonableness.

The court next considers the factors relating to the complexity, expense, and likely duration of the case, as well as the state of the proceedings and the discovery conducted. These factors weigh in favor of approval. The legal issues in this case were novel and the class proceedings, complex. Litigation of this type is expensive and time consuming. Class certification proceedings and interlocutory appeals would have delayed benefit to the class. In addition, class counsel conducted an extensive investigation into the facts of the case and conducted a large amount of discovery into the underlying facts and Honda's defenses. Class counsel hired experts and deposed a number of Honda's personnel. The court finds that class counsel had a full appreciation for the merits of the case.

The nature of the negotiations and the opinions of counsel weigh in favor of approval. The settlement in this case resulted from arm's length negotiations. There was no bias, collusion, or coercion in favor of any party or group of class members. This fact weighs heavily in favor of approval. In addition, the parties negotiated the relief to the class separately from, and before, entering negotiations over attorneys' fees. The parties employed sophisticated counsel, and their negotiations resulted in a settlement that is fair to all of the class members and does not unjustly

benefit any group of class members. The counsel for the parties in this case are experienced in class action litigations, and their opinion that the settlement should be approved and is fair to the class is entitled to weight.

The court has also considered the opinions of absent class members. As of August 1, 2007, from the over 6 million notices sent to class members, only 2,895 timely requests for exclusion were submitted. The extremely small number of opt-outs suggests a favorable opinion by the absent class members. Furthermore, a total of only 82 objections (timely or otherwise) were filed. Many of those were withdrawn following the Fairness Hearing or after reviewing the briefs in support of the settlement. Of these objections, approximately one third of the people who lodged objections did so because they thought the case was frivolous and the consideration paid by Honda was too much, rather than too little. Although the court will address specific objections in the next section of this opinion, it is noteworthy that so few were filed, in light of the massive size of the class and the notice given to the absent class members. All evidence considered, the court finds that the settlement is fair, reasonable, and adequate. It is also consistent with the public interest.

D.    *Consideration of Objections.*

The court will now consider the objections that were filed to the settlement. First, the court overrules all objections that were made by persons who are not members of the proposed class. Persons who are not members of the certified class have no legally protected interest in the settlement and have no standing to object. These objectors include Charles Beuerlein (claim for damages unrelated to facts of this case); Kenneth J. Cooke (owner of a 2001 Honda Accord not covered by class period); and Sol Rosen (claim for damages for allegations unrelated to this case).

Second, the court overrules the objections made by those who failed to include the specified proof that they have bought or leased a class vehicle. The court's Preliminary Approval Order

required such proof. These objectors include: Randi Laine Anderson, George Ankrum, Stephen Barilovits, Art Barrett, Charles Beuerlein, Joseph Bevilacqua, Ronald Bouwman, McConnell Coakwell, Norman Dreyfuss, Lisa Eastwood, James T. Feilder, Sundeep Grewel, Cecil Hinsey, Jesus Ituarte, James Lloyd, Rhoda Ludwig, Charles Matthews, Eric Newman, Ketan Patel, Irene Payne, Scott Phillips, Lorna Rich, Jerry Richie, Vincent Rivera, Patrica Rockstroh, Richard Romig, Sol Rosen, Daniel Steckel, Yvonne Totten, John Warrington, Susan Weis, and an unknown objector from Ft. Wayne, Indiana.

Third, the court overrules all objections that were filed by class members who did not include a list of all cases in which the objector or his counsel have appeared as class action settlement objectors in the past five years, as required by the Preliminary Approval Order. These include: Randi Anderson, Celia Andriello, George Ankrum, Stephen Barilovits, Art Barrett, Marcelle Barrett, Irving Bergin, Charles Beuerlein, Ronald Bouwman, Darlyne Cange, McConnell Coakwell, Kenneth Cooke, Brian Davidson, Norman Dreyfuss, Rick Drollinger, Lisa Eastwood, Ahmed Elsayem, Martha Fleischer, Greg Giles, Lauri Goldman, Cecil Hinsey, Jesus Ituarte, Ronald Kubalski, James Lloyd, Rhoda Ludwig, Charles Matthews, Niloufar Mobashery, Eric Newman, Ketan Patel, Francine Peterman, Scott Phillips, Lorna Rich, Jerry Richter, Leslie Richter, Vincent Rivera, Patricia Rockstroh, Richard Romig, Sol Rosen, Paul Sevougian, Paul Sobolik, Daniel Steckel, Robert Shaffer Delma Studdard, Thomas Sullivan, Yvonne Totten, Jennifer Tupiak, Mary Wakeman, Mark Weaver, and Susan Weis, and an unknown objector from Ft. Wayne, Indiana.

Finally, the court considers the merits of the objections. Putting aside the individuals who are procedurally barred from objecting, there are only two objections to the settlement that deserve any substantive discussion. First, some objectors (for example Zach Hawthorn and Dale Robinson) complain that the settlement does not provide more relief to the class members. Primarily, these

objectors complain that the settlement does not compensate for "diminution in value" claims suffered as a result of having a defective odometer (and a vehicle that has correspondingly fewer miles than what its odometer represents). A claim that a class should have gotten more is easy to make, but the test of a settlement's fairness is whether it reflects a reasonable compromise of the claims asserted. *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 463-64 (2d Cir. 1982). The court agrees with the settling parties that the vast majority of class members who perceive they have this claim would have a difficult time establishing any claim for diminution in value. Moreover, class counsel and Honda could reasonably have determined that a reasonable settlement would provide enhanced warranty benefits and increased monetary compensation for those class members who had actually suffered a concrete, out-of-pocket loss. In other words, it was not unreasonable for class counsel to focus their efforts on obtaining monetary benefits for class members who had actually suffered out-of-pocket costs in repair charges that will be refunded under the settlement. Likewise, it was not unreasonable for class counsel to determine that lessees stand on different footing from owners. The lessee who was charged for excess mileage, unlike an owner who suffered an amorphous "diminution in value" claim, suffered a readily ascertainable out-of-pocket loss. As a result, the court determines that the settlement does not unfairly benefit lessees over owners, nor does it fail to appropriately compensate owners for diminution in value. In doing so, the court observes that plaintiffs in diminution in value cases have faced significant hurdles when attempting to prove such claims. *Briehl v. General Motors Corp.*, 172 F.3d 623, 627-29 (7th Cir. 1999); *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1455 n.7 (S.D. Tex. 1996). It does not make the settlement unfair or unreasonable that the class has to release speculative claims for diminution in value.

Some of the objectors complain that they will have to disclose to future buyers the fact that

their odometer records mileage inaccurately.   The Federal Odometer Act, however, requires disclosure only when the owner knows that the odometer has been tampered with or replaced, such that the mileage reading depicted falls outside "the designed tolerance of the manufacturer of the odometer." 49 U.S.C. § 32703(1). Likewise, the applicable regulations require disclosure when the odometer reading differs from the actual mileage and the difference is greater than that caused by calibration error. 29 C.F.R. § 580.5(e)(3). In any event, the court has determined that it will issue a declaratory judgment in connection with the dismissal of this case to the effect that the allegations in this case do not confer upon settlement class members an obligation to make the required written disclosures (in the absence of specific knowledge of odometer tampering). In light of this decision, the court understands that the parties who raised this objection have withdrawn it.

The court has overruled all of the objections to the settlement.  It is fair, reasonable, and adequate.  The lawsuit was a catalyst in Honda's decision to change its design specifications, and the settlement in this case is in the public's interest. The court therefore approves the settlement with the enhancements contained in the court's final approval order.

E.    Attorneys' Fees.

The court now addresses an appropriate amount to award as attorneys' fees.  Class counsel seeks an award of $9,500,000 in fees and a reimbursement of $298,829.35 in litigation expenses. Class counsel has agreed to compensate various objectors and their counsel from any attorneys' fees awarded by the court.  The objectors compensated by these fees asserted there were certain shortcomings in the settlement.  The plaintiffs and Honda have agreed to certain enhancements to the agreement in response to these contentions.  The total amount of fees to be paid to the objectors is at least $730,000 and could be as much as $880,000.

In calculating an appropriate loadstar factor, the court multiplies the number of hours

reasonably expended by a reasonable hourly rate. *Rutherford v. Harris County, Tex.*, 197 F.3d 173, 192 (5th Cir.1999). Based on the evidence, the court finds that the 12,018.70 hours class counsel has expended since July of 2003 is reasonable. The court further finds that a reasonable hourly rate of $350 per hour is appropriate in this case. This results in a lodestar of $4,206,545.

Whether the lodestar should be adjusted upward or downward depends on the circumstances of the case and the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The twelve factors are: (1) the time and labor required to litigate the matter; (2) the novelty and complicatedness of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether the relationship was long-standing; and (12) awards made in similar cases. *Id.* at 717-19.

The proposed settlement provides for class members receiving lease and warranty extensions of 5%, when the alleged average odometer error was 2.5%. These extensions provide relief beyond that which could have been obtained at trial, notwithstanding the uncertainty of whether or not the class would have prevailed. The defendant has, and would presumably continue, to vigorously deny liability. As a result, the degree of success the class enjoys by way of this settlement weighs in favor of an upward adjustment to the loadstar. The court relies heavily on the opinion of Professor Charles Silver, a renowned expert in this area of the law.

In addition, class counsel invested nearly 5 years investigating, litigating, and negotiating the settlement on behalf of a 6 million member class. The alleged violations of the Federal Odometer Act presented complex and novel issues compounding the time and labor required by class counsel.

And by taking this case on a contingency basis, class counsel assumed a significant risk of receiving no compensation at all. As a whole, these factors further support an upward adjustment of the loadstar.

To the extent that any *Johnson* factors were subsumed in the lodestar, the court did not reconsider them when determining whether any adjustment to the lodestar was required. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998).

In light of these factors, the court is of the opinion that it is reasonable that the lodestar of $4,206,545 be adjusted upward to the $9,500,000 request. The court therefore applies a multiplier of 2.26 to the loadstar, and approves the award of $9,500,000 in attorneys' fees and reimbursement of $298,829.35 in litigation expenses.

F.    Bond.

Class counsel requests that this court require any objector filing a notice of appeal to post a bond. The court agrees that the detrimental impact of an appeal as to the entire class renders it appropriate for the court to require any objector to post an appeal bond. *See* Fed. R. App. P. 7 ("[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal"). It bears mention that Honda stands ready to deliver approximately $10 million in lease refunds to class members. Also, the court is of the opinion that the amount of bond should reflect the significant possibility that any objector's appeal will be subject to Fed. R. App. P. 38.[1] *See Sckolnick v. Harlow*, 820 F.2d 13, 15 (1st Cir. 1987) (holding that it is proper for a district court to considered the possibility that an appeal may result in the award of attorneys' fees in determining the appeal bond amount); and *Allapattah Servs.,*

---

[1] The court notes that considering a potential award of attorneys' fees for purposes of an appeal bond is an issue of first impression for the Fifth Circuit.

*Inc. v. Exxon Corp.*, 2006 WL 1132371, *17 (S.D.Fla. 2006) (requiring appeal bond if an objector appeals on behalf of the entire class).

Therefore, this court requires that any objector who notices an appeal of this Order shall, within seven (7) days after such notice, deposit a cashier's check in the amount of one-hundred and fifty-thousand dollars ($150,000) with the Clerk of the United States District Court in Marshall, Texas for deposit into the Registry of the Court. Alternatively, the appealing objector may post a surety bond in the same amount. The cash or bond will remain on deposit until further Order of the Court.

**4.    Conclusion.**

For the reasons set forth in this Order, the court finds:

(1)    that the class is properly certifiable for settlement purposes;

(2)    that the settlement is fair, reasonable, adequate, and consistent with the public interest. Therefore, the proposed settlement is APPROVED;

(3)    that class counsels' requested attorneys' fees of $9,500,000 plus $298,829.35 in litigation expenses are reasonable; and

(4)    that a $150,000 appeal bond is appropriate in this case.

It is so ORDERED.

SIGNED this 28th day of September, 2007.

_T. John Ward_

T. JOHN WARD
UNITED STATES DISTRICT JUDGE